# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Biora Therapeutics, Inc.,[1] | Case No. 24-12849 (BLS) |
| Debtor. | **Related to Docket Nos. 56, 150, 156, 157** |

## DEBTOR'S REPLY IN SUPPORT OF THE SALE MOTION

The above-captioned debtor and debtor in possession (the "Debtor") respectfully states the following in support of the *Debtor's Motion for Entry of Orders (I)(A) Approving Bidding Procedures For the Sale of Substantially All of the Debtor's Assets, (B) Designating the Stalking Horse Bidder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 56] (the "Sale Motion") and in reply to the *United States Trustee's Objection to the Debtor's Motion to Sell Substantially All of its Assets* [Docket No. 150] (the "U.S. Trustee Objection"):[2]

## Background

1. Prior to the Petition Date, in mid-December, the Debtor commenced a marketing process for a sale of all or substantially all of its assets. This marketing process continued following

---

[1] The last four digits of Biora Therapeutics, Inc.'s federal tax identification number are 0390. Biora Therapeutics, Inc.'s service address is 10070 Carroll Canyon Road, Suite 100, San Diego, CA 92131.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion or the Stalking Horse APA as applicable.

the commencement of this chapter 11 case on December 27, 2024. The Debtor filed the Sale Motion on January 6, 2025, and received Court approval to continue to market its assets and solicit bids on January 27, 2025. *See* Docket No. 117. Despite negotiations and the provision of diligence to a number of interested parties, the Debtor did not receive any Qualified Bids, other than the Stalking Horse Bid, by the Bid Deadline of February 17, 2025. *See* Docket No. 142.

2. On January 16, 2025 the Debtor filed the Stalking Horse APA, and on January 20, 2025 the Debtor filed a proposed sale order. *See* Docket Nos. 73 and 74. Following negotiations with the Committee and the Buyer, the Debtor filed a revised proposed sale order [Docket No. 157] (the "Proposed Sale Order") and an amendment to the Stalking Horse APA [Docket No. 156] (the "SAPA Amendment"). The Proposed Sale Order and the SAPA Amendment made certain changes to the Sale (collectively, the "Sale Revisions") including:

   a. Setting a floor for the Assumed Liabilities of $500,000;
   b. Clarifying that the Buyer is purchasing commercial tort claims;
   c. Providing that the Buyer will not pursue Avoidance Actions against go-forward vendors; and
   d. Providing that the Buyer will not pursue Athyrium Causes of Action.

The Debtor now seeks entry of the Proposed Sale Order in order to preserve the value of its estate for all stakeholders.

**Argument**

3. The only issue presently before the Court is the approval of the Sale Motion. The U.S. Trustee describes the Sale Motion, and the Sale Revisions in particular, as a portion of a broader impermissible scheme. However, the Debtor is only requesting the relief present in the Proposed Sale Order. That relief is squarely within the ambit of the Bankruptcy Code and is amply supported by the facts and circumstances of this case.

4. The Debtor is not party to the Committee Settlement and does not take a position with respect to the use or distribution of the Acquired Assets following the closing of the Sale.

2

The Debtor has proposed a Sale without any unusual terms or terms seeking to exert control over subsequent actions following the closing. To the extent that the U.S. Trustee anticipates taking issue with any such subsequent actions, the Debtor submits that the appropriate time to address those actions is when they are proposed, not through an objection to an otherwise standard, value maximizing, sale transaction.

5. The terms of the Proposed Sale Order, including the Sale Revisions, are commonplace in chapter 11 cases where a Debtor utilizes section 363 to sell all or substantially all of its assets. There are no extraordinary provisions present in the Proposed Sale Order. Indeed, it does not provide for any distributions to creditors, it does not propose the creation of a trust, and it does not contemplate any transfers to third parties. Moreover, the Sale Revisions do not prejudice any of the Debtor's stakeholders. The Stalking Horse APA provided that the Buyer would purchase "all Actions, Claims, causes of action…" of the Debtor. See Stalking Horse APA §2.1(t). A clarification that the Acquired Assets include commercial tort claims, and the Buyer's election to commit to not pursuing certain claims, do not cause harm to any stakeholders where the Buyer was taking all causes of action in the first place. *See, e.g.*, *In re Supply Source Enterprises, Inc.*, Case No. 24-11054 (BLS) (Bankr. D. Del. July 10, 2024) [Docket No. 222] (buyer purchases and releases causes of action); *In re Never Slip Holdings, Inc.*, Case No. 24-10663 (LSS) (Bankr. D. Del. May 24, 2024) [Docket No. 268] (same). Further, setting a floor for Assumed Liabilities benefits the Debtor's estate and *all* its stakeholders by providing certainty and limiting claims against the remaining estate.

6. Approval of the Sale is supported by the facts and circumstances of this case. It is undisputed that the Debtor ran an appropriate marketing process. The result of that process was the Stalking Horse Bid which is now in front of the Court for approval. It is also undisputed that

the terms of the Stalking Horse APA are the best terms available to the Debtor. The Sale remains the Debtor's only option to preserve the value of its estate for the benefit of all its stakeholders. There is no other alternative. Further, given the Debtor's precarious liquidity and the Milestones agreed to in this case, any delay may have the same effect as denial. Accordingly, the Debtor respectfully requests that the Court should approve the Sale Motion.

[*Remainder of Page Intentionally Left Blank*]

## **Conclusion**

WHEREFORE, the Debtor respectfully requests that the Court: (i) deny the U.S. Trustee Objection; (ii) approve the Sale Motion; (iii) enter the Proposed Sale Order; and (iv) grant such other and further relief as the Court deems appropriate under the circumstances.

Dated: February 24, 2025
Wilmington, Delaware

*/s/ David R. Hurst*

David R. Hurst (I.D. No. 3743)
Andrew A. Mark (I.D. No. 6861)
MCDERMOTT WILL & EMERY LLP
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:   (302) 485-3900
Facsimile:   (302) 351-8711
Email:   dhurst@mwe.com
    amark@mwe.com

-and-

Jonathan I. Levine (admitted *pro hac vice*)
Lucas B. Barrett (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone:   (212) 547-5400
Facsimile:   (212) 547-5444
Email:   jlevine@mwe.com
    lbarrett@mwe.com

-and-

Bradley Thomas Giordano (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:   (312) 372-2000
Facsimile:   (312) 984-7700
Email:   bgiordano@mwe.com
    cdingman@mwe.com

*Counsel to the Debtor and Debtor in Possession*